### ROBERT SHARP ET AL.
### V.
### THE PEOPLE.

1.  JUDGES OF ELECTION.—The words of section 86, subdivision 5, of the statute relating to elections, "if any judge of any election shall [refuse to receive the vote of any qualified elector at such election, who will make the affidavit and proof required by this act," etc., mean who *shall* make and present the affidavit. It is not a violation of this statute, for judges of an election to say in advance of an affidavit being presented, that they will not allow a party to vote, even if he does make the statutory affidavit. Such statement is only a threat to violate the law—not an actual violation of it.

2.  CHALLENGE TO VOTE.—Where there is a challenge to a vote, judges of election can not waive the affidavit. If they do, they are liable to a criminal prosecution.

3.  INDICTMENT—WHAT PARTY MUST DEFEND.—Where judges of election are indicted under the specific clause of the statute which provides a penalty against refusing a vote of a qualified elector, in case he presents his affidavit under the act, they are not called upon to defend against a charge of violating any other provision of the statute.

ERROR to the County Court of Livingston county; the Hon. R. R. WALLACE, Judge, presiding. Opinion filed February 29, 1884.

Mr. GEORGE TORRANCE and Mr. J. T. TERRY, for plaintiffs in error; as to instructions, cited St. L. & S. E. R. R. Co. v.

Britz, 72 Ill. 257; Cushman v. Cogswell, 86 Ill. 62; St. L., A. & T. H. R. R. Co. v. Pflugmacher, 9 Bradwell, 300; Evans v. George, 80 Ill. 51; C., B. & Q. R. R. Co. v. Griffin, 68 Ill. 499.

Mr. R. S. McIlduff, for defendant in error; as to intent, cited McCutcheon v. The People, 69 Ill. 601; Farmer v. The People, 77 Ill. 322; Anderson v. The People, 63 Ill. 53; Humpeler v. The People, 92 Ill. 400; State v. Goodenow, 65 Me. 30.

Lacey P. J. This was an indictment charging the plaintiffs in error of a violation of subdivision No. 5 of section No. 86, R. S., entitled "Elections," in refusing the vote of one August Reising at a certain school election held April 15, 1882, by plaintiffs in error, as school directors, at which election the subject being voted on was to fill a vacancy in the school board of directors in District No. 7, in T. 28, R. 7, East, 3 P. M. The election was held under section 42 of the school law. Subdivision No. 5 of said section 86, reads, in connection with the opening and closing clauses, as follows: " If any judge of any election shall refuse to receive the vote of any qualified elector, at such election, who shall make the affidavit and proof required by this act, he shall, on conviction thereof, be fined in a sum not exceeding $1,000, or imprisoned in the county jail not exceeding one year, or both, in the discretion of the court. Sections 67 and 68 of the same act prescribe the occasion and manner and form of the affidavit required of the proposed voter referred to in said subdivision No. 5, and are as follows:

Section No. 67: "Whenever at any general or special election in any precinct, district, city, village, town or ward, any person offering to vote is not personally known to the judges of election to have the qualifications mentioned in the two preceding sections, if his vote is challenged by a legal voter at such election he shall make and subscribe an affidavit in the following form, which shall be retained by the judges of election and returned by them with the poll books." Then follows the form of the affidavit, which requires the elector to

swear that he was a citizen of the United States, or was an elector, on the 1st day of April, 1848, or that he had obtained a certificate of naturalization before a court of record in this State prior to the 1st day of January, A. D. 1870; that he had resided in this State one year; in the county ninety days, and in the election district thirty days next preceding the election, and that he was twenty-one years of age and had not voted at the election. Section 68 provides that, "in addition to such an affidavit the person so challenged shall produce a witness personally known to the judges of the election, and resident in the precinct (or district), or who shall be proved by some legal voter of such precinct or district known to the judges to be such, who shall take the following oath," etc., which provides among other things that the witness shall make affidavit that he is well acquainted with the person offering to vote; that he is an actual *bona fide* resident of this precinct and has resided therein thirty days, and that he verily believes, in the county ninety days, and in the State one year preceding this election. By section number 27 of the school law, the penalties of the above election law are made applicable to the judges of elections under the school law; and by section 42 of the school law, the directors are the judges of elections for directors.

The indictment was found in the circuit court but certified to the county court, and the case was there tried and resulted in the conviction of plaintiffs in error and their being fined $25 each.

In appears from the evidence that the proposed voter, August Reising, was a young man without a family and had resided in his father's family in the district, and had lived there sixteen years; but it appears that he had been out of the district at work during the last twenty-five days, but claimed he had his washing in the district, and claimed his residence with his father in the district all the time.

When he presented his ballot, the judges refused his vote on the grounds that he had not been a resident of the district for the required time. The clerk of the election, Elbert, as August swears, got the book, and he held up his hands and

the clerk read the oath, and his father and Peck were sworn as witnesses. He offered to vote again, but the judges refused. The oath was a verbal one administered by the clerk, who had not the power under the statute to administer it. The clerk went for the book to write an affidavit when the judges told him to keep his seat, and then the clerk got up, and the plaintiffs in error told him to keep his seat or they would get another clerk. They then, after some more parley, decided that he had no right to vote. Reising signed no paper and no affidavit was drawn up. The clerk, Elbert, testified that he "got up to get a book to write an affidavit when Sharp, one of the plaintiffs in error, said, 'its no use in making an affidavit, they would not take his vote if he did' and for me to sit down. I thought I could swear him; there was no affidavit drawn or presented."

That part of the testimony in regard to the plaintiffs in error saying that they would not let Reising vote even if he presented an affidavit, is denied by plaintiffs in error. It is claimed by the attorney for the people that the plaintiffs in error waived the necessity on the part of Reising "to make and subscribe an affidavit" such as the statute requires, and to produce the witness to take the proper oath, by telling him beforehand it would be useless, as his vote would not be received even if he did.

We do not think that it is a violation of the statute to say in advance of an affidavit being presented, that they would not allow him to vote even if he did make the statutory affidavit. They had a right, when he was challenged, and it was their duty under the statute, to refuse his vote, and he had a right, if he desired, to bring the judges to a decision of his right to vote on his affidavit and proof, to present such affidavit and proof before the judges, and then demand that they receive his ballot; then the judges would be called upon to decide, and would have jurisdiction of the question; not otherwise. As the matter stood when the vote was rejected, the plaintiffs in error were not violating the said 5th subdivision of said section of the election law. There is no analogy between a case like this and the waiver of a tender of money or property

by the person entitled to it in a case of civil rights, as supposed by counsel for the people.

At most, the threat, if one was made, to reject the vote in case an affidavit was made, was only a threat to violate the law; it was not an actual violation of it.

The words of the clause of the statute under which this indictment is brought, "shall refuse to receive the vote of a qualified elector at such election who will make the affidavit and proof required by this act," etc., mean who *shall* make and present the affidavit, which will readily be seen by refer ence to section 67 of the same act, which prescribes the elector's duty in case he is challenged.

In case the affidavit is made according to the statute, and the judges refuse the vote, and it turns out that the party whose vote is rejected is a qualified elector, then the judges would probably be liable to the penalty without reference to their good or bad faith; but to make them so liable, the statute must be complied with. The judges would no doubt have a right to show in defense, even with an affidavit, that the vote was rightfully rejected. By the first clause of section 86 the judges are equally liable to the same penalty if they shall permit a person to vote whose vote is challenged, without the proof required by the act.

If there was a challenge, which the evidence appears clearly to show, they could not waive the affidavit; if they did they were liable to a criminal prosecution; hence they were strictly fulfilling their duty in rejecting the vote.

There is some question or claim made that there is no proof of any challenge, and that in rejecting the vote the plaintiffs in error were guilty of willful neglect of duty when they knew Reising was a legal voter, and that they acted from some corrupt motive, such as partisanship and partiality in the discharge of their duty. A sufficient answer to this is, that they are indicted under the specific clause of the statute which provides a penalty against refusing a vote of a qualified elector, in a case where he presents his affidavit under the act, and the plaintiffs in error are not called upon to defend against a charge of violating any other provision of the stat-

ute. The very charge pre-supposes a challenge of the voter, or some equivalent requiring an affidavit.

If the indictment had been drawn under the 8th subdivision of the same section, charging some other willful neglect of duty provided for in that clause, then with proper proof, conviction might be had in accordance with the charge.

But in this the prosecution is confined to the one charge, and, as will be seen, we do not think the proof sustains it.

As a matter of course, in accordance with the view we take of the case, a number of the people's instructions are erroneous; but it is not necessary for us to notice them specially, as the evidence fails to support the verdict. The judgment is therefore reversed and the cause remanded.

Reversed and remanded.